FILED

May 27 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 13-0391

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 137N

OLD STANDARD LIFE INSURANCE
CO., IN LIQUIDATION,

        Plaintiff and Appellant,

   v.

HUNTLEY LAND, LLC,

        Defendant and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fifth Judicial District, In and For the County of Beaverhead, Cause No. DV 09-13369 Honorable Loren Tucker, Presiding Judge |

COUNSEL OF RECORD:

        For Appellant:

            John E. Bloomquist, Patti L. Rowland; Bloomquist Law Firm, P.C.; Helena, Montana

        For Appellee:

            Peter G. Scott; Gough, Shanahan Johnson & Waterman, PLLP; Bozeman, Montana

                     Submitted on Briefs:  April 23, 2014
                             Decided:  May 27, 2014

Filed:

_____
                         Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Old Standard Insurance Co., in Liquidation (Old Standard), appeals the judgment of the Fifth Judicial District Court in favor of Huntley Land, LLC (Huntley). Old Standard challenges the District Court's rulings regarding the parties' dispute over express and implied easements, its conclusion that it lacked jurisdiction to address certain water right transfers, and the award of attorney's fees to Huntley. We affirm the court's judgment on the merits and reverse its award of attorney's fees.

¶3 In 1999, construction began on a commercial water bottling facility on a ranch near Dillon, Montana. The bottled water originated in a spring named the "Atrium Spring." The building process involved installing pumps, a pump house, electric lines, and water pipelines to carry water between the spring and the bottling facility. Eventually, the owners added a building and a parking lot at the Atrium Spring. The pumps receive electricity from a nearby house. The facility was operable by the summer of 2000.

¶4    The ranch was subdivided in 2000, with the Atrium Spring on one property and the bottling plant on the other.    The Plat of the subdivision contains the following language:

> We, also hereby certify that we grant a perpetual easement over, above or under ground on the remaining lands to Lot 1 as shown on the accompanying Plat for a drainfield and that a written easement will be recorded at the Beaverhead County Clerk and Recorder's office upon completion of said drainfield.  We, also hereby certify that we grant a perpetual easement over, above or under ground on the remaining land for the transportation of water to Lot 1 as shown on the accompanying Plat.

¶5    Shortly after, the owners executed a Warranty Deed conveying to Ralph Huntley & Son, Inc. (predecessor of Huntley) a one-third interest in Lot 1, the property where the plant is located, and "an undivided one-third (1/3) interest in and to all water and water rights associated with that certain spring and well known as the 'Atrium Spring' situated on Grantors' property."  The deed also conveyed "all necessary easements for pipelines or other conveyance facilities."

¶6    Huntley acquired the property containing the bottling facility in 2008 through non-judicial foreclosure.  Old Standard acquired the adjacent subdivided property on which the Atrium Spring is located through a judicial foreclosure proceeding commenced in November 2002.  The written easements are intended to benefit Huntley's land and burden Old Standard's land.

¶7    The relationship between Old Standard and Huntley deteriorated as disputes arose regarding the electricity agreement, the location and maintenance of the pipeline, the general cleanliness of the area subject to the easement, and Huntley's use of two access

roads. Old Standard attempted to restrict Huntley's access to the property subject to the easements. Eventually, Huntley locked Old Standard out of the Atrium building and posted a "no trespassing" sign. Prior owners of the properties subsequently attempted to grant Huntley additional or altered easement rights.

¶8    Old Standard filed this suit to clarify the scope of any easements on its land. The District Court granted partial summary judgment to Huntley on the existence of an express easement, but determined that the extent of Huntley's easement interests was a factual matter that required a trial. Following a bench trial, the court entered Findings of Fact and Conclusions of Law and determined that Huntley also holds implied easement rights.

¶9    This Court reviews a district court's ruling on a motion for summary judgment de novo. M. R. Civ. P. 56. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c). This Court reviews a district court's findings of fact to determine whether they are clearly erroneous. *Stevens v. Novartis Pharms. Corp.*, 2010 MT 282, ¶ 24, 358 Mont. 474, 247 P.3d 244. We review questions of law to determine whether they are correct. *Musselshell Ranch Co. v. Seidel-Joukova*, 2011 MT 217, ¶ 11, 362 Mont. 1, 261 P.3d 570.

¶10    We address three issues on appeal: first, whether the District Court erred by determining that Huntley holds easements on Old Standard's property; second, whether

4

the District Court correctly held that it lacked subject-matter jurisdiction to determine the validity of post-foreclosure transfers of water rights; and third, whether the District Court erred by awarding attorney's fees to Huntley.

¶11    "A grantor may expressly reserve an easement over granted land in favor of retained land by using appropriate language in the instrument of conveyance." *Blazer v. Wall*, 2008 MT 145, ¶ 27, 343 Mont. 173, 183 P.3d 84.   An easement also may be expressly reserved by referring in the instrument of conveyance to a recorded plat or certificate of survey in which the easement is adequately described.  *Blazer*, ¶ 27.  An express easement must "(1) identify the grantor and the grantee, (2) adequately describe what is being conveyed, (3) contain language of conveyance, and (4) be signed." *Broadwater Dev., L.L.C. v. Nelson*, 2009 MT 317, ¶ 27, 352 Mont. 401, 219 P.3d 492.

¶12    An implied easement from a preexisting use may be imposed against one party for the benefit of another if there is unity of title at the time of severance.  *Woods v. Houle*, 235 Mont. 158, 162, 766 P.2d 250, 253 (1988).  "A transfer of real property passes all easements attached thereto and creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred for the benefit thereof at the time when the transfer was agreed upon or completed."  Section 70-20-308, MCA.  The extent of an implied easement is determined by "the nature of the enjoyment by which it was acquired."  Section 70-17-106, MCA. Implied easements must rest upon an implied intent of the parties gathered from the

5

circumstances surrounding the conveyance, and the easement must be so apparent that it is discoverable upon reasonable inspection. *Woods*, 235 Mont. at 162, 766 P.2d at 253.

¶13 Old Standard argues that the requirements for a written express easement are not met because the 2000 Warranty Deed did not adequately identify the grantor and the grantee and "the purpose of the purported grant is not ascertainable." The parties do not dispute that the 2000 Warranty Deed and the Plat of the subdivision contain express language that purports to grant an easement.

¶14 The grantors and grantees are clearly and expressly identified in the 2000 deed, and the dominant and servient tenements are identified by detailed property descriptions. It is undisputed that the grantors intended to allow the grantee to convey water from the Atrium Spring to the other subdivided property. The document contained language of conveyance and was signed by the owners of the property being burdened. Section 70-20-101, MCA. The District Court correctly determined that all four elements for creating an express easement have been met. Old Standard's mortgage interest was subject to Huntley's express preexisting interest in the Atrium Spring, conveyance facilities, and the other easements described in the Plat.

¶15 Additionally, the District Court concluded that other easements not contained within the express language of the 2000 deed or the Plat were implied by the intent and conduct of the previous landowners. Because the deed conveyed "all necessary easements for pipelines or other conveyance facilities," it is not entirely clear which easements were found by the District Court to be expressly granted and which easements

6

were implied. Nevertheless, even without consideration of the "post-foreclosure conveyances," we conclude that the scope of the combined express and implied easements reasonably includes all easement rights the District Court found to exist, including the use of the pipelines, Atrium Spring infrastructure, pump house, parking lot, drainfield, and the two traditional access roads between the Atrium Spring and the bottling plant.

¶16 Next, Old Standard argues that the District Court erred when it held that it lacked subject-matter jurisdiction to determine certain water rights deeded to Huntley after Old Standard initiated foreclosure proceedings. Old Standard seeks to invalidate those conveyances. A district court's determination that it lacks subject matter jurisdiction is a conclusion of law, which we review to ascertain whether the court's interpretation of the law is correct. *Zempel v. Liberty*, 2006 MT 220, ¶ 11, 333 Mont. 417, 143 P.3d 123. The determination of water rights is "entirely bifurcated" from the easement issue. *Mildenberger v. Galbraith*, 249 Mont. 161, 166, 815 P.2d 130, 134 (1991).

¶17 The jurisdiction to interpret and determine existing water rights rests exclusively with the Water Court. *In re Deadman's Basin Water Users Assn.*, 2002 MT 15, ¶ 15, 308 Mont. 168, 40 P.3d 387. While a district court may grant injunctive or other relief necessary to preserve property rights or the status quo pending the issuance of a final decree, the court lacks the jurisdiction to issue a final decree with regard to a water right. Section 85-2-406(2), MCA; *Mildenberger*, 249 Mont. at 166, 815 P.2d at 134. A district court has jurisdiction to review contracts allocating interests in water rights that

7

previously have been adjudicated by the Water Court. *Kruer v. Three Creeks Ranch of Wyoming, L.L.C.*, 2008 MT 315, ¶ 19, 346 Mont. 66, 194 P.3d 634.

¶18 Old Standard argues that the District Court had jurisdiction to review the post-foreclosure transfers of water rights, based on *Kruer*. The water rights at issue in this case, however, have not yet been adjudicated by the Water Court. It is not clear which water rights were subject to Old Standard's mortgage interests. Huntley claims that other persons who are not party to this case have interests in the water rights at issue. The water rights involved contain various issue remarks regarding ownership, flow rate, acres irrigated, priority date and place of use. These issues must be addressed by the Water Court before the validity of the transfers may be reached. While Old Standard correctly asserts that the grantors cannot convey rights that they do not own, the District Court correctly determined that issues within the exclusive jurisdiction of the Water Court must be determined before the contractual issues asserted by Old Standard may be addressed.

¶19 Finally, Old Standard argues that Huntley is not entitled to attorney's fees pursuant to § 70-17-112, MCA, which provides for reasonable costs and fees where legal action is brought regarding interference with canal or ditch easements. *Musselshell Ranch Co. v. Seidel-Joukova*, 2012 MT 222, ¶ 7, 366 Mont. 337, 286 P.3d 1212. We agree with Old Standard that this statute does not apply to easements regarding commercial pipelines like those at issue in this case. Attorney's fees will not be awarded absent statutory authority. *Braach v. Graybeal*, 1999 MT 234, ¶ 8, 296 Mont. 138, 988 P.2d 761.

¶20   We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The legal issues raised on appeal are controlled by settled law. The District Court correctly recognized Huntley's ownership of both express and implied easements on Old Standard's property. We also affirm the court's decision that it did not have jurisdiction to determine whether conveyance of water rights in the post-foreclosure deeds was valid under the facts of this case. We reverse the District Court's award of attorney's fees to Huntley.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON