DA 13-0537

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 72

SUDAN DRILLING, INC.,

        Plaintiff and Appellant,

    v.

GLEN D. ANACKER and
CLARICE M. ANACKER,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                    In and For the County of Flathead, Cause No. DV 05-305
                    Honorable Brenda Gilbert, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Richard De Jana; Richard De Jana & Associates, PLLC; Kalispell,
                Montana

        For Appellees:

                Douglas Scotti; Morrison & Frampton, PLLP; Whitefish, Montana

Submitted on Briefs:  February 12, 2014
             Decided:  March 18, 2014

Filed:

_____
                    Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Sudan Drilling, Inc., appeals the order of the Montana Eleventh Judicial District Court granting Glen and Clarice Anacker's motion for summary judgment. The sole issue raised on appeal is whether the District Court properly granted the Anackers' motion for summary judgment on the basis that the recording of a previous judgment discharged Sudan Drilling's construction lien and rendered Sudan's claims moot, even though this Court reversed and remanded the previous judgment. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Sudan filed a complaint against the Anackers on April 25, 2005, seeking to foreclose on a construction lien. Sudan alleged that the Anackers owed $3,970 for the digging of the first of two domestic water wells on the Anackers' property. Both parties filed motions for summary judgment. On November 16, 2007, the District Court entered an order granting the Anackers' motion on the grounds that Sudan never completed the first well and that Sudan breached its contract with the Anackers to drill the well in a workmanlike manner because it drilled in the wrong location.

¶3 The District Court's December 5, 2007 judgment directed the Clerk and Recorder of Flathead County to remove Sudan's lien from the public record. The Anackers recorded the judgment with the clerk and recorder's office. Sudan thereafter appealed. Sudan did not post a supersedeas bond, move to stay the execution of the judgment, or move to reinstate the lien. This Court reversed the judgment and remanded the case to the District Court, holding that the undisputed fact that the well was not completed was insufficient to invalidate the construction lien and that genuine issues of material fact

2

precluded summary judgment because the parties presented conflicting testimony concerning responsibility for the well's misplacement. *Sudan Drilling, Inc. v. Anacker*, 2009 MT 14, ¶ 17, 349 Mont. 42, 202 P.3d 778. Sudan then recorded a lis pendens on the Anackers' real property to provide notice of this Court's decision.

¶4 After this Court remanded the case, Clarice Anacker deposited a $5,955 check as a bond with the Clerk of Court. The deputy clerk filed a letter stating that the bond "will release said lien" from the property pursuant to § 71-3-551, MCA, despite that the bond was not filed within thirty days of Sudan's action to foreclose the lien as required by the statute. The letter referenced the number of the lis pendens, but only referred directly to the lien. The parties do not dispute that the clerk of court lacked the legal authority to release the lis pendens in this manner. The lien has not been removed and is still of record. Nonetheless, the Anackers were able to close on a pending $154,000 refinancing loan after the deputy clerk filed the letter of release. Sudan later recorded a subordination agreement, expressly subordinating the position of its lien to the deed of trust securing the Anackers' loan.

¶5 On remand, the Anackers once again sought summary judgment—this time arguing that the lien was unenforceable because the recording of the District Court's prior judgment effectively discharged and released the lien, even though this Court reversed the judgment on appeal. The District Court granted the Anackers' motion. Sudan appeals.

**STANDARD OF REVIEW**

¶6 This Court reviews appeals from summary judgment rulings de novo, applying the standards set forth in M. R. Civ. P. 56(c). *Mt. W. Bank, N.A. v. Cherrad, LLC*, 2013 MT 99, ¶ 25, 369 Mont. 492, 301 P.3d 796. Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c).

**DISCUSSION**

¶7 *Whether the District Court's previous judgment discharged Sudan Drilling's construction lien, thus rendering Sudan's claims moot.*

¶8 The judicial power of Montana courts is limited to justiciable controversies that may be resolved by the courts. Mootness is one of several central concepts of justiciability. "[I]f the issue presented at the outset of the action has ceased to exist or is no longer 'live,' or if the court is unable due to an intervening event or change in circumstances to grant effective relief or to restore the parties to their original position, then the issue before the court is moot." *Greater Missoula Area Fedn. of Early Childhood Educators v. Child Start, Inc.*, 2009 MT 362, ¶ 23, 353 Mont. 201, 219 P.3d 881. "[C]ourts lack jurisdiction to decide moot issues insofar as an actual 'case or controversy' no longer exists." *Child Start*, ¶ 23. "In deciding whether a matter is moot, we determine whether the court can grant effective appellate relief." *Mt. W. Bank*, ¶ 30.

¶9 This Court has remarked that "[t]here is no reason why this Court cannot grant effective relief" in a case where "[n]o property changed hands pursuant to the judgment

4

nor are there third party interests involved." *Martin Dev. Co. v. Keeney Constr. Co.*, 216 Mont. 212, 220, 703 P.2d 143, 148 (1985). *Martin Dev. Co.* involved an action for breach of a construction contract. The district court issued a final judgment awarding the plaintiff $72,000 in damages and ordered that the defendant satisfy the judgment from a rent impoundment account administered by a title company. *Martin Dev. Co.*, 216 Mont. at 215, 703 P.2d at 145. The defendant did not take any action to stay execution of the judgment, but appealed the district court's order. The plaintiff asked this Court to dismiss the appeal because the judgment had been satisfied. We declined to do so, holding that the case was not moot because there had been no change of position that would make it impossible for this Court to grant effective relief. *Martin Dev. Co.*, 216 Mont. at 220, 703 P.2d at 148.

¶10 In contrast, we have held that effective relief could not be fashioned where the underlying property was sold to a third party during the pendency of the appeal. *E.g. Mt. W. Bank*, ¶ 33; *Turner v. Mt. Engg. & Constr.*, 276 Mont. 55, 63-64, 915 P.2d 799, 804-05 (1996); *Graveyard Creek Ranch, Inc. v. Bell*, 2005 MT 172, ¶¶ 13-15, 327 Mont. 491, 116 P.3d 779. In *Mt. W. Bank*, for example, a district court entered an order that invalidated a construction lien. The party possessing the lien failed to take any action to stay the order or prevent the sale of the property. We noted that, "[a]lthough a party is not required to seek a stay of execution, a party choosing not to seek such a stay runs the risk of having the appeal become moot." *Mt. W. Bank*, ¶ 32; *accord Turner*, 276 Mont. at 63, 915 P.2d at 804. We warned of the "particular danger of dismissal for mootness where the sale of property to a third party is involved." *Mt. W. Bank*, ¶ 32 (quotation

omitted). We held that even if the district court incorrectly determined the invalidity of the construction lien, the sale of the units named in the construction lien to third-party purchasers in good faith rendered moot the claim regarding the validity of the lien. *Mt. W. Bank*, ¶ 33.

¶11 We have rejected a categorical rule that the satisfaction of a judgment renders an appeal moot. *Progressive Direct Ins. Co. v. Stuivenga*, 2012 MT 75, ¶¶ 43-44, 364 Mont. 390, 276 P.3d 867. In *Stuivenga*, the defendant argued that it was impossible for this Court to grant relief because the appellant did not post a supersedeas bond or stay the disbursement of interpleaded funds, and the funds had been paid to third parties. *Stuivenga*, ¶ 41. We rejected this claim, noting that if a party cannot be restored to its original pre-judgment position, other possibilities such as restitution may be appropriate. *Stuivenga*, ¶ 41. The Anackers maintain in like fashion that, although this Court reversed the previous judgment, Sudan's failure to stay the execution of the judgment, post a supersedeas bond, or reinstate the lien rendered Sudan's claims moot. As we explained in *Stuivenga*, however, an appellant is not required to seek a stay of execution or post a supersedeas bond in order to preserve its claims for appeal. *Stuivenga*, ¶ 45. Whether a case has become moot will depend on the relief sought and the specific factual and procedural circumstances of the particular case. *Stuivenga*, ¶ 43. Failure to take precautionary measures, on its own, does not render a party's claims moot.

¶12 Precautions certainly would be advisable: a stay of the execution of the judgment would have served to put third parties on notice that Sudan's appeal was pending and protected Sudan's lien from becoming unenforceable upon sale of the land to an innocent

6

third party. Sudan bore the considerable risk that the property could have been sold to a third-party purchaser in good faith as happened in *Mt. W. Bank*. The distinguishing factor in this case is that the Anackers' property was not sold. The risk never was realized because the Anackers remained at all times in possession of the property that is subject to Sudan's lien.

¶13 In effect, the Anackers argue that although this Court reversed the District Court's judgment, the judgment nonetheless remained in effect, and it is now too late for effective relief. It is an established principle, however, that all proceedings taken under a judgment are dependent for their validity upon the judgment being sustained. *Stuivenga*, ¶ 22. Once the judgment of a district court has been reversed, that judgment no longer has any effect. This Court has stated, "[W]hen the judgment is reversed, it is then a nullity, and the matter stands as if no judgment had ever been rendered." *Anderson v. Border*, 87 Mont. 4, 11, 285 P. 174, 177 (1930); *C. Mont. Stockyards v. Fraser*, 133 Mont. 168, 186, 320 P.2d 981, 991 (1957) ("To reverse a judgment or order means to overthrow it by a contrary decision, to make it void. When a judgment or order is reversed it is as if never rendered or made.").

¶14 This fundamental rule remains true even if a judgment properly has been recorded prior to its reversal. Once this Court reversed, the previous judgment was rendered a nullity—as though it never had been entered—and could not release the Anackers' real property from Sudan's lien. The land has not been sold to a third-party, the risk Sudan faced has not been realized, and the lien still exists on the property. Although the lien is in second position to the deed of trust, Sudan still may litigate its validity.

7

¶15    Finally, as the District Court disposed of Sudan's additional claims for abuse of process and for property damage primarily on the basis of its ruling on the lien foreclosure claim, we remand for further consideration of these claims.

## CONCLUSION

¶16    We reverse and remand for proceedings consistent with this opinion. Based on our determination of error, we vacate the District Court's award of fees and costs to the Anackers.


/S/ BETH BAKER

We concur:

/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE